UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MARCO HERNANDEZ,                         )   NO. SACV 15-1431-KS
                          Plaintiff,     )
                                         )
            v.                           )   MEMORANDUM OPINION AND ORDER
                                         )
CAROLYN W. COLVIN, Acting                )
Commissioner of Social Security,         )
                          Defendant.     )
_____)

INTRODUCTION

Plaintiff Marco Hernandez ("Plaintiff") filed a Complaint on September 4, 2015, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). On January 27, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either remanding the matter for further administrative proceedings or ordering the payment of benefits. (Joint Stip. at 34.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.* at 35.) On October 1 and 5, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9-10.) The Court has taken the matter under submission without oral argument.

1

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3

4      Plaintiff, who was born on December 14, 1959, filed an application for a period of

disability and DIB on May 28, 2010.[1]  (Administrative Record ("A.R.") 236-237.)  Plaintiff

5      alleged disability commencing April 24, 2009 due to nerve damage, depression, high blood

6      pressure, and cholesterol.  (Id. 276.)  Plaintiff's prior relevant work experience included

7      employment as a mechanical design engineer.  (Id. 45, 80.)  The Commissioner denied

8      plaintiff's application initially (id. 85-87) and on reconsideration (id. 88).  On May 25, 2011,

9      plaintiff requested a hearing.  (Id. 122-123.)  On July 19, 2012, Administrative Law Judge

10     Charles E. Stevenson ("ALJ Stevenson") held a hearing.  (Id. 66-84.)  Plaintiff, who was

11     represented by counsel, and Joseph Torres, a vocational expert, testified at the hearing.  (Id.

12     69-80, 80-82.)  On August 3, 2012, ALJ Stevenson issued an unfavorable decision denying

13     plaintiff's application for DIB.  (Id. 92-99.)

14

15     On September 26, 2013, the Appeals Council vacated ALJ Stevenson's hearing

16     decision and remanded the case for further proceedings.  (A.R. 105-107.)  On remand, the

17     Administrative Law Judge was directed to:  (1) obtain additional updated evidence

18     concerning plaintiff's impairments in order to complete the administrative record in

19     accordance with the regulatory standards regarding consultative examinations and existing

20     medical evidence; (2) give further consideration to plaintiff's maximum residual functional

21     capacity during the entire period at issue and provide rationale with specific references to

22     evidence of record in support of assessed limitations; evaluate the treating and nontreating

23     source opinions, and explain the weight given to such opinion evidence; evaluate third party

24     opinion evidence; (3) further evaluate plaintiff's subjective complaints, including pain; (4)

25     further evaluate plaintiff's residual functional capacity and whether he can meet the demands

26

27     [1]      Plaintiff was 49 years old on the alleged onset date and was thus defined as a younger person under agency

regulations.  See 20 C.F.R. § 404.1563(c).  On December 14, 2009, plaintiff turned 50 and, as a result, became a person

closely approaching advanced age under agency regulations.  Id. § 404.1563(d).  On December 14, 2014, plaintiff turned

28     55 and, as a result, became a person of advanced age under agency regulations.  Id. § 404.1563(e).

of his past relevant work; and (5) if warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base.  (*Id.* 106-107.)

On May 15, 2014, Administrative Law Judge Sharilyn Hopson ("ALJ") held a hearing on remand from the Appeals Council.  (A.R. 41-65.)  Testifying at the hearing were the following:  plaintiff, who was represented by council; Rosie Hernandez, plaintiff's wife; Arnold Ostro, a medical expert; Glenn Griffin, a psychological expert; and Alan Boroskin, a vocational expert ("VE").  (*Id.* 45-48; 48-54; 54-56; 56-59; 60-61; 62-65.)  On August 4, 2014, the ALJ issued a partially unfavorable decision denying plaintiff's application for DIB from April 24, 2009, the alleged onset date, to June 13, 2014, and granting plaintiff's application for DIB beginning on June 14, 2014.  (*Id.* 33-34.)  On July 8, 2015, the Appeals Council denied plaintiff's request for review.  (*Id.* 1-5.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015 and had not engaged in substantial gainful activity from the alleged onset date of April 24, 2009.  (A.R. 22.)  The ALJ further found that plaintiff had the following severe impairments:  "idiopathic facial pain; partial tear of the right rotator cuff; impingement syndrome; cervical and lumbosacral discogenic disease; diabetes mellitus; atypical facial pain; and depressive disorder, not otherwise specified."  (*Id.* 23.)  The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.*)  The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows:

Occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday, with the use of a cane to ambulate outside the work area and the ability to stand and stretch every hour estimated to take 1 to 3 minutes per hour; no work above shoulder level; no foot pedals bilaterally; occasionally bend, stoop, crouch, or climb stairs; never crawl, kneel, or climb ladders, ropes, or scaffolds; avoid work at unprotected heights or around moving and dangerous machinery; simple routine tasks; occasional interaction with coworkers and supervisors; no intense interaction with the public and occasional peripheral contact with the public; and no fast paced work such as rapid assembly line work.

(*Id.* 24.)   The ALJ found that plaintiff could not perform his past relevant work as a mechanical designer (DOT 007.161-018).

The ALJ applied the age categories "non-mechanically, and consider[ed] the additional adversities in this case."  (A.R. 32); *see also* 20 C.F.R. § 404.1563(b) ("We will not apply the age categories mechanically in a borderline situation.  If you are within a few days to a few months of reach an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category. . .").  Accordingly, although plaintiff would not become a person of "advanced age," as defined by the regulations, until December 14, 2014, the ALJ classified plaintiff as an individual of advanced age as of June 14, 2014.  (A.R. 32.)

The ALJ determined that prior to June 14, 2014, in light of the VE's testimony and plaintiff's age, education, work experience, and RFC, plaintiff was able to perform work that existed in significant numbers in the national economy, such as the jobs of photocopying-machine operator (DOT 207.685-014) and mail clerk (DOT 209.687-026).  (A.R. 32-33.)

4

Beginning on June 14, 2014, however, in light of plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were no jobs that exist in significant numbers in the national economy that plaintiff could perform.  (*Id.* 33.)  Therefore, the ALJ found that plaintiff was not disabled prior to June 14, 2014, but became disabled on that date.  (*Id.* 33-34.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following three errors:  (1) the ALJ erred in finding that Plaintiff can perform the identified work at Step Five (Joint Stip. at 5-9, 15-17); (2) the ALJ improperly assessed the opinions of treating physicians Charles Nguyen, M.D., and Gungiganur Gurushanthea, M.D. (*id.* at 18-23, 27-28); and (3) the ALJ improperly evaluated plaintiff's subjective symptom testimony (*id.* at 28-31, 34).

## I.    The ALJ Erred At Step Five.

Plaintiff contends that the ALJ erred at Step Five regarding reaching, reasoning level, and use of a cane.  (Joint Stip. 5-9.)

In the five-step sequential evaluation process for determining disability, once the ALJ concludes at step four that a claimant cannot return to his former work, the ALJ must then determine, in step five, whether there are jobs in the national economy that the claimant can perform consistent with any impairments and/or limitations identified at step two. *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).  Here, the ALJ relied on the testimony of the VE and concluded that, prior June 14, 2014, plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the

national economy, including the representative occupations of photocopy machine operator and mail clerk.  (A.R. 32-33.)

## A.  Reaching

Plaintiff argues that the VE's testimony deviates from the DOT and the ALJ failed to obtain any explanation for the deviation.  (Joint Stip. at 5-7, 15-17.)  Specifically, plaintiff argues that the photocopy machine operator and mail clerk jobs require frequent reaching, which conflicts with his RFC precluding work above shoulder level.  (*Id.*)

The DOT is the Commissioner's primary source of reliable vocational information, and is usually the best source for how a job is "generally performed" in the national economy.  *See Pinto v. Massanari,* 249 F.3d 840, 845-46 (9th Cir. 2001); *Johnson v. Shalala,* 60 F.3d 1428, 1434-35 and n.6 (9th Cir. 1005).  "The DOT creates a rebuttable presumption as to the job classification.  To deviate from the DOT classification, an ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'"  *Tommasetti v. Astrue,* 533 F.3d 1035, 1042 (9th Cir. 2008) (quoting *Johnson*, 60 F.3d at 1435).  An ALJ's failure to inquire into a conflict between the VE's opinion and the DOT job description, and a failure to address and explain such a conflict in the decision, constitutes procedural error.  *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54 and n.19 (9th Cir. 2007) (in light of SSR 00-4p's requirements, an ALJ may not rely on the testimony of a VE regarding the requirements of a particular job without first inquiring whether the VE's testimony conflicts with the DOT).

Here, the ALJ found that plaintiff could perform no work above shoulder level.  (A.R. 24.)  The hypothetical posed to the VE precluded work above shoulder level bilaterally.  (*Id.*

63.)  The VE testified that the hypothetical person could perform the photocopy machine operator and mail clerk jobs, and did not identify any conflict with the DOT.  (*Id.* 64.)

The DOT describes job number 207.685-014 as a "photocopying –machine operator," with the following duties:

> Tends duplicating machine to reproduce handwritten or typewritten matter: Places original copy on glass plate in machine.  Places blank paper on loading tray.  Sets control switch for number of copies.  Presses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process.  May clean and repair machine.  May receive payment for duplicate copies.  Important variables may be indicated by trade name of machine tended.

(DOT No. 207.685-014.)[2]  The DOT description also states that the job requires "frequent" reaching "from 1/3 to 2/3 of the time."  (*Id.*)  Social Security Ruling 85-15 describes reaching as "extending the hands and arms in any direction."  SSR 85-15.

Plaintiff argues that this Court found a basis for remand under similar facts.  (Joint Stip. at 6 (citing *Engel v. Colvin*, No. SACV 14-01989-JEM, 2015 WL 6453081, at *6-8 (C.D. Cal. Oct. 23, 2015); *Hernandez v. Astrue,* No. CV10-3142 AJW, 2011 WL 223595, at *3 (C.D. Cal. Jan. 21, 2011); *Newman v. Astrue*, No. EDCV 11-512 AGR, 2012 WL 1884892, at *1 (C.D. Cal. May 23, 2012).)  The Commissioner argues that there is a split within the Ninth Circuit whether a limitation on overhead reaching conflicts with a DOT description that requires reaching generally, and the Court should adopt a "common sense

---

[2]   As discussed below, the ALJ erred in finding that plaintiff could perform the mail clerk job because of an apparent conflict between the reasoning level and plaintiff's limitation to simple, routine tasks.  Thus, the Court does not discuss the requirements of the mail clerk job.

approach" and find no apparent conflict where the DOT job description makes no reference specifically to above-the-shoulder work. (Joint Stip. at 11-14 (citing *Matthewson v. Colvin*, No. CV-14-08204-PCT-GMS, 2015 WL 9297648, at *1 (D. Ariz. Dec. 22, 2015); *Dickmeier v. Colvin*, No. 2:14-cv-00967-HZ, 2015 WL 8514188, at *2 (D. Or. Dec. 11, 2015); *Frias v. Colvin*, No. CV 15-02185-JEM, 2015 WL 8492453, at *7 (C.D. Cal. Dec. 10, 2015)).)

The cases cited by the Commissioner are unpersuasive. In particular, *Matthewson*, *Dickmeier*, and *Frias* are distinguishable. In *Matthewson*, the claimant could perform unlimited reaching with the right arm and occasional reaching above shoulder level with the nondominant left arm, which was an important factor the court considered in finding no conflict with the identified DOT jobs that included frequent reaching. *Matthewson*, 2015 WL 9297648, at *2-6. In contrast, here, plaintiff was precluded from work above shoulder level, bilaterally. (A.R. 24.) In *Dickmeier*, the VE testified that she chose the identified jobs specifically because those positions were compatible with the claimant's occasional bilateral overhead reaching limitation. *Dickmeier*, 2015 WL 8514188, at *5. In contrast, here, the VE did not testify that he chose the identified jobs because they were compatible with plaintiff's preclusion from work above shoulder level. (A.R. 63-64.) In *Frias*, the court considered that the claimant's own description of her past relevant work, which the DOT described as including frequent reaching, indicated that frequent overhead reaching was not required. *Frias*, 2015 WL 8492453, at *7. In contrast, here, there was no testimony indicating that the photocopy machine operator job did not include reaching above shoulder level, only the DOT description which unequivocally states that the job requires "frequent reaching." (DOT No. 207.685-014.)

Thus, there is an unresolved potential conflict where, as here, a plaintiff's RFC precludes work above shoulder level and the DOT's requirements for an identified job may actually include work above shoulder level. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (remanding to ALJ where claimant was limited to occasional reaching above

the shoulder and the identified job required frequent reaching under the DOT, stating, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the [VE's] help.") (cited with approval in *Massachi*, 486 F.3d at 1152 n.7). "Reaching" includes overhead reaching and, therefore, a potential conflict exists between the VE's testimony about the photocopy machine operator job and the DOT description. *See Imran v. Colvin*, No. CV 14-1943-PLA, 2015 WL 5708500, at *6 (C.D. Cal. Sept. 28, 2015) (citing *Carpenter v. Colvin*, No. 1:13-cv-00984-SKO, 2014 WL 4795037, at *8 (E.D. Cal. Sep. 25, 2014); *Richardson v. Astrue*, No. CV 11-1593-SP, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012); *Samsaguan v. Colvin*, No. EDCV 12-2219-DFM, 2014 WL 218419 (C.D. Cal. Jan. 21, 2014).) The fact that the ALJ asked the VE to explain any conflicts with the DOT and the VE did not identify any conflicts does not absolve the ALJ of the duty to resolve the apparent conflict. *See Hernandez*, 2011 WL 223595, at *2-5.

The remaining question is whether, as the Commissioner argues, plaintiff waived the argument that the VE's testimony conflicted with the DOT by declining to ask any questions of the VE. (Joint Stip. at 10.) The Court finds that the issue has not been waived, even though plaintiff had different counsel at the time of the hearing. *See Gonzales v. Astrue*, No. 1:10-cv-01330-SKO, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) (holding that "the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument," and noting that counsel at time of the hearing was different); *see also Norris v. Colvin*, No. EDCV 12-1687 RNB, 2013 WL 5379507, at *3 (C.D. Cal. Sept. 25, 2013) (holding that claimant did not waive argument by failing to challenge the VE's representation that her testimony comported with the DOT because claimants "need not preserve issues in proceedings before the Commissioner or her delegates") (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)).

Given the possible conflict between the VE's testimony and the DOT, the Court cannot determine whether the ALJ properly relied on the VE's testimony. *Massachi*, 486 F.3d at 1153-54 and n.19. The remedy under these circumstances is a remand so the ALJ may conduct the appropriate inquiries. *Id.* at 1154.

## B.  Reasoning Level

Plaintiff argues that the mail clerk job, with a Reasoning Level of 3, conflicts with his limitation to simple, routine tasks. (Joint Stip. at 7-8.) The Commissioner concedes that *Zavalin v. Colvin,* 778 F.3d 842 (9th Cir. 2015), supports plaintiff's argument. (Joint Stip. at 10.) In *Zavalin*, the Ninth Circuit found that an apparent conflict between Level 3 Reasoning and an RFC limitation to simple, routine tasks. *Zavalin*, 778 F.3d at 847. However, the Commissioner contends that any error is harmless because the photocopy machine operator job, which the VE and ALJ identified as another job that plaintiff could perform, has a Reasoning Level of 2, which is consistent with plaintiff's limitation to simple, routine work. (Joint Stip. at 10 (citing *Zavalin*, 778 F.3d at 846 (finding that Reasoning Level 2 is consistent with a limitation to simple work)); DOT 207.685-014). The Court agrees. Accordingly, the discrepancy between the reasoning level for the mail clerk job and plaintiff's RFC limitation to simple, routine tasks does not, of itself, warrant reversal of the ALJ's decision.

## C.  Cane Usage

Plaintiff contends that the ALJ erred by failing to inquire on the impact of cane usage on the identified light jobs, and that the record supports a greater frequency of cane usage. (Joint Stip. at 8-9, 17.) For the reasons discussed below, the Court disagrees.

11

The ALJ found that plaintiff would need a cane for ambulation outside the work area. (A.R. 24.)  As the Commissioner argues, the ALJ specifically asked the VE to consider a hypothetical individual who needs "the use of a cane to ambulate outside the work area." (Joint Stip. at 14; A.R. 63.)  The VE testified that an individual who needed to use a cane outside the work area could work as a photocopy machine operator or mail clerk.  (A.R. 64.) Accordingly, the ALJ did not fail to inquire on the impact of cane usage on the identified light jobs.

Plaintiff argues that the record supports a greater frequency of cane usage.  The Court disagrees.  The record evidence shows that in October 2010, plaintiff's gait and balance were within normal limits without using any assistive device (A.R. 26-27, 484), and in May 2012, no abnormality was noted to forward gait (*id.* 27, 593).   In November 2013, a kinesiotherapist indicated that plaintiff used a cane to walk, and his balance was unsteady without a cane.  (*Id.* 793.)  But an epidural injection helped, and plaintiff was able to walk without a cane by January 2014.  (*Id.* 980-981.)  In April 2014, plaintiff reported pain when walking approximately 30 feet, and used a cane for assistance.  (*Id.* 1042, 1045.)  Plaintiff cites evidence showing that he used a cane, but no treating or examining physician reported that the use of a cane was necessary, and in fact, three doctors specifically noted that plaintiff did not need such a device. (A.R. 484 (examining physician Dr. Enriquez), 506 (treating physician Dr. Gurushanthea), 985 (examining physician Dr. Safavi).)  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding that the ALJ did not err in rejecting claimant's allegation that he needed a cane because "none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk," and two doctors noted that claimant did not need such a device).  To the extent plaintiff's testimony supports a greater frequency of cane usage, the ALJ properly discounted plaintiff's credibility, as discussed below.  The ALJ's determination that plaintiff would need a cane for ambulation outside the work area – and not more frequently – is supported by substantial evidence.

1

2

**II.     The ALJ's Assessment of the Treating Physicians' Opinions.**

3

        Plaintiff contends that the ALJ did not properly consider the opinions of plaintiff's

4

treating physicians, Dr. Nguyen and Dr. Gurushanthea.  (Joint Stip. at 5-9, 15-17.)  The

5

Court finds that the ALJ did not err in assessing Dr. Nguyen's opinions.  However, the

6

ALJ's reasons for discounting the opinions of Dr. Gurushanthea are not supported by

7

substantial evidence.

8

9

        As a general rule, the opinion of treating doctor is given greater weight than those of

10

doctors who do not treat a claimant.  *See Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1995).

11

When the treating physician's opinions are not contradicted by another doctor, the opinions

12

of a treating doctor may be rejected only for "clear and convincing" reasons.  *Smolen v.*

13

*Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  "Even if the treating doctor's opinion is

14

contradicted by another doctor, the ALJ may not reject this opinion without providing

15

specific and legitimate reasons supported by substantial evidence in the record." *Orn*, 495

16

F.3d at 632.

17

18

        **A.  The ALJ Did Not Err in Assessing the Opinions of Dr. Nguyen**

19

20

        The ALJ provided specific, legitimate reasons, supported by substantial evidence in

21

the record, for discounting Dr. Nguyen's opinion.   Dr. Nguyen, plaintiff's treating

22

psychiatrist, completed a mental impairment questionnaire on May 11, 2011.  (A.R. 580-

23

585.)   Dr. Nguyen diagnosed plaintiff with Major Depressive Disorder ("MDD") and

24

assigned a GAF of 45.[3]  (*Id.* 580.)  He opined that plaintiff was unable to meet competitive

25

standards to complete a normal workday and workweek without interruptions from

26

27

28

[3]        GAF refers to Global Assessment of Functioning – a numeric scale (0-100) used by mental health practitioners and physicians to rate the social, occupational and psychological function of adults. *See* Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., 2000).

13

psychologically based symptoms.  (*Id.* 582.)  He found that plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence or pace, and three repeated episodes of decompensation within a 12 month period, each of at least two weeks duration.  (*Id.* 584.)  He also opined that plaintiff would be absent from work more than four days per month due to his impairments or treatment.  (*Id.*)  In a letter dated March 1, 2012, Dr. Nguyen stated that plaintiff's symptoms of depressed mood, low energy level, poor concentration, difficulty sleeping, and anhedonia "would make it difficult for him to work."  (*Id.* 513.)

The ALJ gave "little weight" to Dr. Nguyen's opinion because it lacked support from "the other evidence of record."  (A.R. 31.)  An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole.  *See Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted, for example, that in April 2010, plaintiff was referred for evaluation and treatment of depression after having been treated with Cymbalta by his primary care physician.  (A.R. 25, 519-520.)  Plaintiff reported that the depression was less on the Cymbalta, and his interest and concentration were better.  (*Id.* 26, 520.)  The results of the mental status examination showed that plaintiff had good eye contact and no psychomotor disturbance, his speech was normal in speed and volume, and thought content was without delusions.  (*Id.* 26, 521.)  His mood was somewhat irritable and affect was euthymic, but his insight was good and judgment was intact.  (*Id.*)  Plaintiff was diagnosed with depressive disorder, not otherwise specified, with a GAF of 55.  (*Id.*)

In July 2010, plaintiff complained to Dr. Nguyen of low energy level, decreased appetite, constant pain and depressed mood.  (A.R. 516.)  On mental status examination, Dr. Nguyen noted that plaintiff was cooperative and pleasant with normal rate of speech; his mood was dysphoric and his affect full; and he had fair concentration, memory, insight and judgment.  (*Id.*)  He was diagnosed with depression secondary to general medical condition and given a GAF of 50.  (*Id.*)  Other objective evidence in the record indicates that plaintiff's

14

depression was less severe than as diagnosed by Dr. Nguyen.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinions).

In October 2010, at a psychiatric consultative examination with Dr. Bagner, plaintiff reported that he was unable to concentrate, had mood swings, nightmares, depression, nervousness, feelings of helplessness and hopelessness, low motivation, and difficulty with memory.  (A.R. 26, 477.)  He stated that he did not sleep well.  (*Id.*)  On mental status examination, plaintiff stated he felt "depressed."  (*Id.* 26, 479.)  His affect was mood congruent; his speech was intact and coherent, but mildly decreased in rate, rhythm and volume; he could register one out of three objects after five minutes and was able to do serial threes and attempted serial sevens; and he appeared to have normal reality contact.  (*Id.*)  He was diagnosed with depressive disorder, not otherwise specified, and given a GAF of 65.  (*Id.* 26, 479-480.)  Dr. Bagner concluded that plaintiff would have no limitations interacting with supervisors, peers and the public, and completing simple tasks; mild limitations maintaining concentration and attention and completing complex tasks; and mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption.  (*Id.* 480.)  The ALJ assigned "little weight" to Dr. Bagner's opinion.  (*Id.* 30.)

At his psychological consultative examination with Dr. Yee, a licensed psychologist, in January 2014, plaintiff reported symptoms of depression, poor motivation, limited interests in socializing, staying in bed, poor sleep,  poor concentration, troubling thoughts, and difficulty with memory and concentration.  (A.R. 29, 992-993.)  On mental status examination, Dr. Yee found no psychomotor agitations or retardation.  (*Id.* 29, 994.)  Plaintiff's thought processes were linear and goal-directed with no loosening of associations and he exhibited no evidence of auditory or visual hallucinations, delusions, or illusions, and no obsessions, compulsions, or paranoia.  (*Id.*)  His mood was described as "ok," and his

speech was fluent with normal volume, rate, and rhythm.  (*Id.*)  Plaintiff had some deficits in attention, but his concentration was adequate for conversation and time limited assessment tasks.  (*Id.* 29, 995.)  His insight and judgment appeared to be fair, and he demonstrated no impairment in social and common sense understanding.  (*Id.*)   Dr. Yee found that the psychological tests administered "d[id] not appear to be a valid representation of [plaintiff]'s current level of functioning."  (*Id.* 29, 995-997.)  Dr. Yee diagnosed plaintiff with depression and assigned a GAF of 60.  (*Id.* 29, 997.)

Dr. Yee assessed that plaintiff had no impairment in the ability to understand, remember, and carry out simple one or two-step job instructions; relate and interact with co-workers and the public; deal with changes in a routine work setting; and accept instructions from supervisors.  (A.R. 997-998.)  Plaintiff had mild impairment in the ability to do detailed and complex instructions, and maintain concentration and attention, persistence and pace. (*Id.* 997.)  He had mild to moderate impairment in the ability to perform work activities without special or additional supervision.  (*Id.* 998.)  He had moderate impairment in the ability to associate with day-to-day work activity, and maintain regular attendance in the work place and perform work activities on a consistent basis.  (*Id.* 997-998.)  Dr. Yee concluded that plaintiff appeared to be managing the symptoms of his depression "adequately."  (*Id.* 998.)  The ALJ assigned "little weight" to Dr. Yee's opinion.  (*Id.* 31.)

In determining plaintiff's mental RFC, the ALJ gave "great weight" to the opinion of the testifying medical expert Dr. Griffin, based on its consistency with the record as a whole, Dr. Griffin's review of the entire record, and his familiarity with the social security regulations.[4]  (A.R. 30.)  Dr. Griffin opined that plaintiff would be limited to simple, repetitive work with occasional interaction with peers, coworkers, supervisors, and the general public, and no fast-paced work such as rapid assembly line work.  (A.R. 30, 55.)  A

---

[4]     Contrary to plaintiff's argument, the ALJ did not assign little weight to all of the psychological opinions in the record.  (Joint Stip. at 22.)

non-examining physician's opinion in addition to other evidence, such as laboratory test results or contrary reports from other examining physicians constitutes substantial evidence that justifies the rejection of a treating physician in favor of a non-examining physician. *See Andrews*, 53 F.3d at 1042; *Lester*, 81 F.3d at 831.

Viewing the entirety of the medical evidence, the ALJ could reasonably find that Dr. Nguyen's opinion was unsupported by the record as a whole. *See Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational determination," the Commissioner's conclusion must be upheld.). Accordingly, the Court finds that the ALJ's decision to give little weight to Dr. Nguyen's opinion is supported by substantial evidence in the record and free of legal error.

**B. The ALJ Erred in Assessing the Opinions of Dr. Gurushanthea**

In discounting the opinions of plaintiff's other treating physician, Dr. Gurushanthea, however, the ALJ failed to provide specific, legitimate reasons, supported by substantial evidence in the record. On November 9, 2011, Dr. Gurushanthea completed a Physical RFC Questionnaire in which he listed plaintiff's diagnoses as atypical otalgia; cervicalgia; degeneration of cervical intervertebral disk; disorders of tendon and bursae in shoulder region, unspecified; lumbago, degeneration of lumbar or lumbosacral disk; and depression. (A.R. 501.) Dr. Gurushanthea opined that plaintiff could: occasionally lift and carry 10 pounds and frequently less than 10 pounds; sit, stand, and walk for 8 hours in an 8-hour working day, with allowances for shifting positions at will; occasionally look down, turn head left or right, look up, hold head in a static position, stoop, crouch/squat, climb ladders and stairs; rarely twist; use the right hand to grasp, turn, and twist objects 35% of the day; use the left hand to grasp, turn, and twist objects 65% of the day; and never reach (including overhead) with the right arm. (*Id.* 31, 505-506.)

Dr. Gurushanthea further opined that plaintiff would be absent from work more than four days per month as a result of his impairments or treatment, and plaintiff was incapable of even "low stress" jobs.  (A.R. 505, 507.)  Dr. Gurushanthea identified clinical findings and objective signs in support of his opinion, including the following: a June 2010 MRI of the cervical spine showing multilevel degenerative disk disease and facet arthritis, with severe spinal canal and neuroforaminal stenosis at the C5/C6 level; straightening of the C/S curvature perhaps due to muscle spasm or position; and decreased range of motion of the cervical spine and right shoulder.  (*Id.* 502, 504.)

The ALJ gave Dr. Gurushanthea's opinion "little weight . . . because it is not consistent with the record as a whole, *e.g.*, unremarkable physical examinations (normal grip and motor strength) and minor MRI/x-ray findings as discussed."  (A.R. 31.)   Although an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole, *see Batson*, 359 F.3d at 1195, the ALJ's rejection of Dr. Gurushanthea's opinion is not supported by substantial evidence.

Contrary to the ALJ's findings, the record of plaintiff's physical limitations include, *inter alia*,  evidence of decreased grip and motor strength and more than minor MRI/x-ray findings.  In March 2010, plaintiff's right shoulder range of motion was limited secondary to pain, and there was tenderness to palpation noted at the old surgical site and anterior aspect of the shoulder.  (A.R. 25, 457.)  An MRI of the right shoulder revealed tendinosis and partial tear of the supraspinatus tendon.  (*Id.* 25, 466.)  In October 2010, internal medicine consultative examiner, Dr. Enriquez, found that plaintiff was able to generate 40 pounds of force using the dominate right hand, and 60 pounds of force using the left hand, but that plaintiff could occasionally lift and/or carry 100 pounds and frequently lift and/or carry 50 pounds.  (*Id.* 26, 482, 484.)  Imaging from May 2012 indicated moderate degenerative disk disease of the lumbar spine, minimally changed from imaging in December 2010, including moderate to severe narrowing of the L3-4 and L4-5 intervertebral disk spaces and severe

18

facet sclerosis in the lower lumbar spine.  (*Id.* 27, 587.)  An August 2012 MRI of the lumbar spine indicated advanced multilevel degenerative disk and facet disease, severe lumbar stenosis at L2/3, L3/4, and L4/5 due to posterior disk bulges and facet/ligamentous hypertrophy, and severe bilateral L3/4 and L4/5 neuroforaminal narrowing and moderate left L2/3 neuroforaminal narrowing.  (*Id.* 732-734.)

In September 2013, plaintiff complained of tingling and numbness of the right shoulder and right upper extremity and weakness of the right hand grip.  (A.R. 27, 648.)  The examination was limited because plaintiff refused to move his right shoulder fearing pain, but the presentation was noted to be consistent with possible right shoulder degenerative joint disease possibly related to history of trauma.  (*Id.*)  X-rays of the right shoulder showed osteoarthritis and postsurgical changes.  (*Id.* 27, 645.)  A September 2013 MRI of the cervical spine indicated multilevel degenerative disk disease and facet arthritis, with severe spinal canal and neuroforaminal stenosis at the C5/C6 level, which was slightly progressed when compared with a June 2010 study.  (*Id.* 768-769.)  In October 2013, plaintiff refused to move his right shoulder fearing pain, but his right hand grip, wrist extension, wrist flexion, elbow extension, and elbow flexion were decreased.  (*Id.* 27, 634.)   There was EMG evidence of an acute on chronic right C6-7 motor radiculopathy and NCS evidence of a right median sensory and motor neuropathy, with slowing across the wrist, and acute denervation of the right APB.  (*Id.* 27-28, 634.)

In a November 2013 Kinesiotherapy Physical Capacity Evaluation, plaintiff's right upper extremity grip strength was noted to vary greatly during rapid repetitive testing; plaintiff was unable to perform full range of motion on the right to lift arms to shoulder level, overhead, and reach across; and plaintiff was unable to push and pull with full range of motion on the right.  (A.R. 792-795.)  In a Department of Veterans Affairs shoulder and arm conditions disability benefits questionnaire in November 2013, Dr. Nance indicated that right shoulder flexion and abduction were 60 degrees, whereas normal endpoint was 180

degrees; right shoulder range of motion was 65 degrees; right shoulder abduction and forward flexion 4/5; and right-side empty can test and external rotation/infraspinatus strength test were positive. (*Id.* 618-623.)  In January 2014, consultative examiner in internal medicine, Dr. Safavi, found that plaintiff's grip strength was 30/30/30 pounds in the dominant right hand, and 90/90/90 pounds in the left hand. (*Id.* 28, 981.)  Examination of the right shoulder was noted to be difficult because plaintiff refused to lift his right arm above 90 degrees due to pain. (*Id.* 28, 982-983.)

While the ALJ noted some of the above findings, and some examinations did show normal gait, reflexes, and sensation (*see*, *e.g.*, A.R. 404, 477, 484, 596, 593, 703, 888, 981), the ALJ's rejection of Dr. Gurushanthea's opinion based on plaintiff's "normal" grip and motor strength and "minor" MRI/x-ray findings is not supported by substantial evidence in light of this record.  On remand, the ALJ shall either credit Dr. Gurushanthea's opinion or articulate specific and legitimate reasons for discounting it.

## III.  The ALJ Did Not Err In Discounting Plaintiff's Credibility.

Plaintiff contends the ALJ failed to provide clear and convincing reasons for finding him not credible. (Joint Stip. at 28-31, 34.)  Where there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Lingenfelter*, 504 F.3d at 1036.  "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude that adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (*citing Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991)).

1        Here, the ALJ made no finding of malingering and found plaintiff's medically

2 determinable impairments could reasonably be expected to cause the alleged symptoms, but

3 also determined that plaintiff's statements concerning the intensity, persistence and limiting

4 effects of these symptoms were "not entirely credible."  (A.R. 29.)  The ALJ cited the

5 following reasons for discounting plaintiff's testimony:  (1) the lack of more aggressive or

6 surgical intervention suggests that plaintiff's symptoms and limitations were not as severe as

7 alleged; (2) the objective medical evidence did not support the severity of plaintiff's

8 allegations; and (3) plaintiff's ability to engage "in a somewhat normal level of daily activity

9 and interaction" diminished the credibility of plaintiff's allegations of functional limitations.

10 (*Id.*)

11

12        The ALJ's reasons for discounting plaintiff's subjective symptom testimony are

13 legally sufficient and supported by substantial evidence in the record.  The ALJ properly

14 relied on plaintiff's conservative treatment as a reason for discounting plaintiff's subjective

15 symptom testimony.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of

16 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of

17 an impairment.").

18

19        Plaintiff's shoulder, neck, ear and face pain was treated generally with physical

20 therapy, therapeutic exercises, Fentanyl patch, and medication, including narcotics. (A.R.

21 25-29, 382-393, 399-400, 403, 405-406, 445-446, 503, 508, 625, 653, 980.)  His ear and face

22 pain was eased by massage and warm showers.  (*Id.* 501.)  He was diagnosed with trigeminal

23 neuralgia and offered surgical intervention, but he refused it.  (*Id.* 712-714, 979.)  Plaintiff's

24 shoulder pain was treated with steroid injections in 2003 and 2008, with fair relief, and

25 Motrin, a heating pad, capsaicin cream, massage, and warm showers.  (*Id.* 503.)  Plaintiff's

26 back pain was "relieved w[ith] massage" in July 2013.  (*Id.* 866.)

27

28

1   Plaintiff had two lumbar spine epidural injections (in 2003 and 2008), and one
2   epidural injection in late 2013, which "transiently helped." (*Id.* 503, 980.) Plaintiff was
3   referred for evaluation for an additional lumbar spine epidural injection in April 2014, as the
4   injections had "significantly improved his pain in the past," and was advised to proceed with
5   physical therapy, smoking cessation, acupuncture, yoga, swimming, massage therapy, and
6   possibly muscle relaxants. (*Id.* 1046.) He was also treated with a lumbosacral corset, a
7   TENS unit, and a cane per plaintiff's request. (*Id.* 686, 693, 965.) Decompressive surgery
8   for his back was not recommended because plaintiff's pain was not related to a focal disc
9   protrusion. (*Id.* 1046.) Plaintiff's depressive disorder was treated with medication, with
10  good response, and he was not referred to therapy or admitted to a hospital for psychiatric
11  treatment. (*Id.* 365, 400, 408, 478, 480, 515-516, 819, 875, 993.) As of May 2013, plaintiff
12  indicated that he did not want to make changes to his depression medications. (*Id.* 876-877.)

13

14   Plaintiff argues that he, in fact, treated his impairments aggressively because he takes
15  narcotic medications and underwent invasive epidurals for pain management. (Joint Stip. at
16  30.) The Court disagrees and finds that the ALJ could reasonably find that plaintiff's
17  treatment as a whole was conservative. *See Martinez v. Colvin*, No. ED CV 14-846-SP,
18  2015 WL 4270021, at *6 (C.D. Cal. July 13, 2015) (finding substantial evidence supported
19  the ALJ's finding that claimant received conservative treatment where plaintiff was treated
20  with anti-inflammatory medication, injections, and narcotic pain medication); *see also*
21  *Huizar v. Comm'r*, 428 F. App'x. 678, 680 (9th Cir. 2011) (finding that plaintiff responded
22  favorably to conservative treatment, which included the use of narcotic pain medication);
23  *Higinio v. Colvin*, No. EDCV 12-1820 AJW, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014)
24  (holding that claimant's treatment as a whole was conservative even though claimant had
25  been prescribed narcotic medication at various times).

26

27   Here, the mere fact that plaintiff received several epidural injections does not
28  demonstrate aggressive treatment when there is no evidence that such treatments were given

22

on a consistent or regular basis.  Indeed, examination notes dated  July 30, 2012 indicate that plaintiff's last epidural steroid injection was "one 3 years ago."  (A.R. 948.)  Furthermore, narcotic medications and epidural injections were only a part of plaintiff's overall treatment regimen, which included medication management, massage, physical therapy, a lumbosacral corset, a TENS unit, and a cane.  (A.R. 686, 693, 866, 965, 1046.)  Progress notes from September 2012 reflect that plaintiff reported decreased pain after the TENS usage, indicating  "it inc. [sic] his activity/mobility with less discomfort.  It improved his standing/walking tolerance." (A.R. 928.)  *See Tommasetti*, 533 F.3d at 1040 (holding that the ALJ permissibly discounted credibility when claimant "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a [TENS] unit, and a lumbosacral corset").  Plaintiff received two epidural steroid injections prior to the alleged disability onset date, one injection after the alleged disability onset date, and another injection was discussed due to the significant pain relief provided with the prior injections.[5]  (*Id.* 503, 980, 1046.)  Where a claimant receives injections only as needed and the injections are effective in controlling pain, injections may constitute conservative treatment.  *See Chavez v. Colvin*, No. EDCV 14-1547-JPR, 2015 WL 5923537, at *5 (C.D. Cal. Oct. 9, 2015) (finding claimant's care conservative where she responded well to injections that were received on an as-needed basis) (citations omitted).

Even assuming the ALJ erred in discounting plaintiff's subjective symptom testimony based on conservative treatment, any error is harmless because the ALJ's remaining reasons for discounting plaintiff's subjective symptom testimony are clear and convincing and supported by substantial evidence.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding that the ALJ's error in giving two invalid reasons for partially discrediting plaintiff's testimony was harmless where the ALJ gave valid reasons

---

[5]     Plaintiff argues that he underwent an epidural injection, but continued to have persistent pain.  (Joint Stip. at 30 (citing A.R. 639).)

for partially discrediting plaintiff's testimony).   The ALJ properly discounted plaintiff's subjective symptom testimony based on inconsistency with the objective medical evidence.

The ALJ provided a detailed analysis of the objective medical evidence, which does not support the severity of the alleged symptoms and limitations.   (A.R. 25-29.)   For example, at an October 2010 internal consultative examination, plaintiff was in no acute distress, was able to generate 40 pounds of force using the right hand and 60 pounds of force using the left hand, had tenderness on palpation of the right pinna, but no deformities or signs of inflammation, had normal range of motion of the cervical spine and the lumbar spine, had no tenderness to palpation or muscle spasm, had negative straight leg test, had normal muscle tone and bulk without atrophy, had 5/5 motor strength without focal motor deficits, had normal gait and balance, and did not require an assistive device for ambulation. (*Id.* 26-27, 477-480.)   Imaging of the lumbar spine in May 2012 showed moderate degenerative disk disease of the lumbar spine, minimally changed from December 2010. (*Id.* 27, 587.)   An MRI of the brain in April 2013 was unremarkable.  (*Id.* 27, 616.)   At an October 2013 examination, plaintiff's extremities were warm and well perfused, with no edema and no calf tenderness.   (*Id.* 27, 633.)   Plaintiff refused to move his right shoulder fearing of pain.   (*Id.* 27, 634.)   Sensation was intact to light touch throughout the dermatomes. (*Id.*)

A January 2014 physical examination was generally normal, although plaintiff once again refused to lift his right arm above shoulder level and refused to go beyond 90 degrees maximum abduction due to pain.   (*Id.* 28, 982.)   Despite plaintiff's chronic back pain and degenerative disk disease, the examination revealed no significant radiculitis, lumbar flexion to about 90 degrees, negative straight leg raising, no evidence of a significant kyphosis or noticeable scoliosis, and bilateral paraspinal muscle tenderness in the lumbar area.  (*Id.* 28, 982-983.)   Plaintiff's mental condition was treated favorably with medication, and his mental status examinations were generally within normal limits, except for mood.  (A.R. 26,

29, 479-480, 516, 819, 875, 969, 994-995.)  In January 2014, the psychological consultative examiner assessed some deficits in attention, but found that plaintiff "appear[ed] to be managing adequately."  (*Id.* 998.)

Insofar as the ALJ relied on the lack of supporting objective medical evidence as a basis for discounting  plaintiff's subjective symptom testimony, plaintiff argues that the ALJ was not permitted to rely on this reason alone.  (Joint Stip. at 30.)  Plaintiff is correct, but the ALJ did not rely on this reason alone.  The ALJ also properly relied on inconsistencies between plaintiff's claims and his demonstrated activities.  (A.R. 29.)  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."); *see also Burch*, 400 F.3d at 681.

The ALJ specifically noted that plaintiff could take care of his personal care and pet care, and could walk, drive, pay bills, shop, and go to the park or exercise.  (A.R. 29, 47, 59, 283-289.)  Psychological consultative examiner Dr. Bagner noted in October 2010 that plaintiff could dress and bathe himself.  (*Id.* 26, 478.)  Plaintiff stated that he could "get up, shower, dress, medication, set things in order, do chores."  (*Id.* 478.)  He could manage money, drive himself, and exercise.  (*Id.*)  He described a good relationship with his wife and family, and described "little contact" with friends.  (*Id.*)  Psychological consultative examiner Dr. Yee noted in January 2014 that plaintiff:  could take care of self-bathing and personal hygiene, but required some assistance with dressing; relied on his wife for transportation; could pay bills and handle cash; could go out alone, but preferred to be accompanied by his wife; and had fair to good relationships with family and friends.  (*Id.* 993.)

The ALJ could reasonably find that plaintiff's level of activity impugned his claims of greater incapacity, such as an inability to sit for more than 15 minutes at a time or stand

for 30 minutes at a time, and an inability "to carry out through the day" due to daily ear and head pain.  (A.R. 25, 57-59, 290.)  *See Molina*, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").  On this record, the Court finds that the ALJ provided clear and convincing reasons for discounting plaintiff's credibility.  Accordingly, the ALJ did not err in finding plaintiff not entirely credible.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 14, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

26